UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

IntelliWorks Corp.,                                            Civil Action No. 1:26-cv-1203

          *Plaintiff*,

    - against -                                           **COMPLAINT**

Alok Daga, Trevor Borthwick, Kanwal Oswal,                     **JURY TRIAL DEMANDED**
Pradhi Shila Private Limited, Meilan Song, and
MI Global Enterprises Inc.,

          *Defendants*.

---------------------------------------------------------------X

Plaintiff IntelliWorks Corp. ("IntelliWorks" or "Plaintiff"), by and through its undersigned counsel, complaining of Defendants Alok Daga ("A. Daga"), Trevor Borthwick ("Borthwick"), Kanwal Oswal ("Oswal"), Pradhi Shila Private Limited ("Pradhi Shila"), Meilan Song ("Song"), and MI Global Enterprises Inc. ("MI Global" and, collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.  This action seeks to redress the damages that Plaintiff has suffered as a result of Defendants' coordinated scheme to loot IntelliWorks of its valuable trade secrets, intellectual property, and financial resources.

2.  As detailed below, Defendants A. Daga, Borthwick, and Oswal, were among the founders of Plaintiff IntelliWorks.

3.  However, rather than work toward the sustained success of the company, they instead exploited their positions of trust and repose to gain access to the company's valuable trade secrets and finances, and then divert those assets to separate ventures and various collaborators, including defendants Pradhi Shila, Meilan Song, and MI Global.

4.      Now, Plaintiff is constrained to bring this action because after nearly a year of sustained efforts, Defendants have refused to make Plaintiff whole and repair the damage that they have done.

## PARTIES

5.      Plaintiff IntelliWorks Corp. is a Delaware corporation, with its principal place of business in New York, New York.

6.      Defendant Alok Daga is a natural person, and upon information and belief, is a resident and citizen of Ontario, Canada.

7.      Defendant Trevor Borthwick is a natural person, and upon information and belief, is a resident and citizen of Ontario, Canada.

8.      Defendant Kanwal Oswal is a natural person, and upon information and belief, is a resident and citizen of Ontario, Canada.

9.      Defendant Pradhi Shila Private Limited is a private limited company organized under the laws of India.  Upon information and belief, its principal place of business is in West Bengal, India.

10.     Defendant Meilan Song is a natural person, and upon information and belief, is a resident and citizen of Ontario, Canada.

11.     Defendant MI Global Enterprises Inc. is a Canadian corporation.  Upon information and belief, its principal place of business is in Ontario, Canada.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*

13.     Independently, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff, a Delaware corporation with its principal place of business in New York, and Defendants, who are residents and citizens of Canada and India, respectively.

14.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because, as detailed below, those claims form part of the same case and controversy as Plaintiff's federal law claims.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### A.     The Parties Form IntelliWorks, a Thriving FinTech Startup

16.     Defendants A. Daga, Borthwick, and Oswal are each employed in senior positions by the Bank of Montreal.

17.     In early 2023, Defendants A. Daga, Borthwick, and Oswal began to discuss the possibility of forming a new financial technology ("FinTech") startup venture that would focus on supporting large financial institutions by leveraging technology to reduce the complexity, time, and costs associated with various routine operations.  Although the tasks that IntelliWorks targeted are relatively mundane, they nonetheless represent a significant cost to financial services companies, in terms of time, the risk of human error, and the direct expense of paying workers to undertake these repetitive tasks.  As such, successfully streamlining these operations could save large, enterprise-scale companies significant money, and capturing even a fraction of these savings would represent a tremendous opportunity for a startup like IntelliWorks.

18.     In the course of these discussions, Oswal reached out to his longtime family friend, non-party Mody ("Mody"), whom Oswal knew to be a successful entrepreneur with an established track record of founding new companies in the FinTech industry.

19.     Based on Oswal's invitation, Mody travelled to Toronto in March 2023 to discuss the potential business with A. Daga, Borthwick, and Oswal in person.

20.     Ultimately, Mody, A. Daga, Borthwick, and Oswal (collectively, the "Founders") agreed to form IntelliWorks.

21.     Given that A. Daga, Borthwick, and Oswal were, and remain, employed by the Bank of Montreal, the Founders agreed that A. Daga, Borthwick, and Oswal would privately work to develop the technology that IntelliWorks would offer, that A. Daga would use his longstanding relationships in the financial industry to identify potential clients, and that Mody would serve as the company's President, Chief Executive Officer, and sole director.

22.     During these initial discussions, the Founders agreed that that, to maximize the value of the company, and to ensure that IntelliWorks had the capital necessary to grow, the company would reinvest the revenue that it generated back into the company, rather than distributing dividends or other income to the Founders.

23.     Likewise, the four Founders agreed that each of them would own 25% of IntelliWorks, either directly or through an affiliate, that each of them would exercise managerial authority over the company, and that each of them would serve as an agent of the company.

24.     Almost from the outset, IntelliWorks was a phenomenal success, surpassing the benchmarks that the Founders had anticipated.

25.     For example, although product development and client acquisition for enterprise-focused FinTech companies are notoriously slow given the strict regulatory regimes and review processes that govern financial service providers, IntelliWorks had already acquired at least one

enterprise customer by the first quarter of 2024. Similarly, by mid-2024, IntelliWorks had generated approximately $700,000 in revenue, and projected annual recurring revenue of at least $1,000,000.

26. Based on this performance, even conservative estimates valued IntelliWorks at more than $20 million.

**B.     IntelliWorks Vigorously Protected its Trade Secrets**

27. As set forth above, the core of IntelliWorks' business is to develop proprietary software for its clients based on the specific challenges facing financial services companies, including streamlining and automating otherwise manual, labor-intensive operations.

28. The value of this software and the solutions that IntelliWorks provides are derived largely from the fact that they are specific to IntelliWorks, are not known by the general public, cannot easily be ascertained and replicated by competitors, and therefore give IntelliWorks an advantage in the market. Put otherwise, the value of the software, solutions, and services provided by IntelliWorks would be greatly diminished if competing ventures, or the clients themselves, learned how IntelliWorks' software functions and engineered alternative software based on that information.

29. Accordingly, from the first days of the business, IntelliWorks has strictly guarded this proprietary software, the accompanying source code, and the underlying data processing techniques, methodologies, and algorithms, all of which IntelliWorks used in service of its core business of aiding enterprise financial services companies in administering syndicated loans. Similarly, IntelliWorks vigorously protected its client lists, pricing information, and strategic business plans which were likewise not known by the general public and confer an advantage on IntelliWorks in the market.

30. Collectively, this nonpublic information constitutes valuable trade secrets (the "Trade Secrets") that are valuable to IntelliWorks precisely because they are not known to the general public, and provide IntelliWorks with an advantage against its competitors in the industry.

31.     In view of the immense value of the Trade Secrets to IntelliWorks, the company has taken a number of steps to ensure that these Trade Secrets are thoroughly protected from unauthorized disclosure.  Among other things, the company:

      a.     Restricts access to information, including the Trade Secrets, to authorized personnel on a need-to-know basis.

      b.     Implements data security controls, including password protections and access restrictions to ensure that individuals are provided access solely to the information that they need to perform their roles, and that this access is monitored and logged to ensure compliance with IntelliWorks' policies.

      c.     Enforces confidentiality obligations through employment and shareholder agreements.  IntelliWorks' agreements with clients also specifically require that those clients treat IntelliWorks' software and other Trade Secrets as confidential, refrain from attempting to reverse engineer them, and otherwise ensure that IntelliWorks' Trade Secrets are thoroughly protected from disclosure.

**C.     Defendants Steal IntelliWorks' Trade Secrets and Attempt to Destroy the Evidence**

32.     Unfortunately, despite IntelliWorks' rapid success, and the longstanding personal friendship between Oswal and Mody, in or about May 2024, Defendants began to divert corporate opportunities away from IntelliWorks and toward other entities that Defendants controlled.

33.     For example, on May 6, 2024, A. Daga, Borthwick, and Oswal formed, or caused to be formed, a new entity in India called Pradhi Shila, in which Mody has no ownership interest, and over which Mody has no control.

34.     At first, A. Daga, Borthwick, and Oswal claimed that the purpose of Pradhi Shila was to create an external, back-office team to support IntelliWorks from India.

35.     Mody was immediately skeptical of this arrangement, but, in view of the trust that he placed in his co-Founders, after noting his objection to the plan, he ultimately relented.

36.     Unbeknownst to Mody, A. Daga, Borthwick, and Oswal almost immediately began transferring Trade Secrets and diverting corporate opportunities away from IntelliWorks and to Pradhi Shila.

37.     As Mody would discover only later, A. Daga, Borthwick, and Oswal used IntelliWorks' systems to coordinate their brazen raid of corporate assets.

38.     For example, in an email dated September 7, 2024 (annexed hereto as **Exhibit A**) Defendant A. Daga (using the alias "Dev Anand") sent an email to Defendants Borthwick (using the alias "Brad Thompson") and Oswal (using the alias "Om Singh"), among others, all of whom used their @intellworks.ai email addresses.  The names associated with these @intellworks.ai email addresses are plainly aliases because no individuals named Dev Anand, Brad Thompson, and/or Om Singh have ever been employed by IntelliWorks.

39.     In this September 7, 2024 email, A. Daga outlined a detailed plan to transfer IntelliWorks' proprietary software, source code, and other intellectual property to Pradhi Shila. Tellingly, the email does not copy Mody, IntelliWorks' President and CEO, and instead prominently warns the recipients of the email to "PLEASE KEEP THIS COMMUNICATION BETWEEN THE 4 OF US."  Likewise, the use of obvious pseudonyms reflects the participants' knowledge that they were engaged in misconduct, such that they attempted to obscure and conceal their identities.

40.     Additionally, the email itself refers to its contents as "updates," reflecting that the co-conspirators had been planning their scheme for quite some time and had taken significant steps to execute this plan, including, as set forth in the email itself:

        a.      Formation of a team in India:  The email identifies individuals who had already been onboarded to assist in the competing venture.

b.      Transfer of Information:  The email references the planned upload of files to a collaboration platform, indicating that proprietary IntelliWorks data had already been transferred or was in the process of being transferred away from IntelliWorks, in direct violation of IntelliWorks' policies and written agreements.

c.      Development of Competing Products:  The email lists "Product Demos & Review (Cashflow, TMS, Standard Docs)" and a "New Feature List," confirming that Pradhi Shila, in coordination with A. Daga, Borthwick, and Oswal, was developing competing technology based on stolen Trade Secrets.

d.      Establishment of Infrastructure:  The email discusses plans to migrate operations to Microsoft Office 365 and obtain Microsoft email accounts for all team members, demonstrating Pradhi Shila's transition into a fully operational competitor.

41.      In an effort to conceal their illicit activities and cripple IntelliWorks, Borthwick, acting in concert with A. Daga and Oswal, systematically deleted a substantial amount of IntelliWorks' user accounts and associated user data.

42.      For example, and as is reflected in the audit logs for IntelliWorks' Microsoft account, between October 6, 2024, and October 16, 2024, someone using the "Brad Thompson" alias (believed to be Borthwick), successfully "hard deleted" a number of users.  Microsoft audit logs reflecting these deletions are annexed hereto as **Exhibit B**.  In Microsoft's terminology, a "hard delete" refers to removing a user account and all associated data permanently, thereby bypassing the ordinary 30-day period in which deleted data can be recovered and restored.  Here, A. Daga, Borthwick, and Oswal permanently deleted this user information so that IntelliWorks would be unable to regain access to this invaluable information, and to conceal the extent of Defendants' theft from the company.

43.     Although the full extent of this data theft and destruction remain unknown, based on the information presently available to IntelliWorks, it is clear that A. Daga, Borthwick, and Oswal deleted IntelliWorks' proprietary software, source code, and other valuable Trade Secrets.  This brazen destruction of IntelliWorks' data has critically hampered IntelliWorks' ability to operate, including by limiting its ability to access essential information, such as company records, operational data, and similar materials.

**D.     Defendants Improperly Divert Corporate Funds**

44.     At the same time that A. Daga, Borthwick, and Oswal began to funnel IntelliWorks' Trade Secrets to a separate, competing venture, they also began to drain funds surreptitiously from IntelliWorks for their own personal benefit and to the detriment of the company.

45.     Given the Founders' agreement, and IntelliWorks' established policy, of retaining all earnings to reinvest in the company's growth, rather than distributing dividends or other proceeds, A. Daga and Borthwick attempted to disguise these transfers as payments for services rendered to IntelliWorks, even though no such work was ever performed.

46.     To this end, in March and April 2024, A. Daga and Borthwick arranged for IntelliWorks to make payments to their affiliates for phony "consulting" services.

47.     For example, on March 12, 2024, A. Daga caused IntelliWorks to pay $5,000 to Defendant MI Global, an entity that A. Daga controls, for consulting services, even though A. Daga and MI Global both indisputably knew that MI Global never rendered any such services to IntelliWorks, such that MI Global was not entitled to receive this payment.  In total, MI Global has received at least $60,000 in diverted funds from IntelliWorks.

48.     Likewise, on March 18, 2024 and April 4, 2024 Borthwick caused IntelliWorks to pay $5,000 and $15,000, respectively, to his romantic partner, Defendant Meilan Song for consulting services, even though Borthwick and Song both indisputably knew that Song never rendered any such

services to IntelliWorks, such that Song was not entitled to receive this payment.  In total, Song has received at least $75,000 in diverted funds from IntelliWorks.

49.     Finally, on September 18, 2024 A. Daga caused IntelliWorks to pay $15,920 to Defendant Pradhi Shila, again, for services that A. Daga and Pradhi Shila knew that Pradhi Shila did not perform for IntelliWorks.  In total, Pradhi Shila has received at least $27,000 in in diverted funds from IntelliWorks.

**E.     Defendants Transfer IntelliWorks' Trade Secrets to a Competing Business**

50.     As set forth above, A. Daga, Borthwick, and Oswal did not merely destroy IntelliWorks' Trade Secrets to deprive the company of their benefit.  Rather, as documented in Defendants' plan, they transferred IntelliWorks' Trade Secrets to the new entity that they had formed in India, Pradhi Shila.

51.     In service of this plan, A. Daga, Borthwick, and Oswal granted unauthorized access to IntelliWorks' systems and data to Pradhi Shila, and potentially to other unknown users in direct violation of company policies and governing law.

52.     The Pradhi Shila website describes the company as providing "Resources & Support for the AI and Machine Learning communities," and its "Key Offerings" include datasets, model development tools, consulting, support, deployment, and integration.  The website further states that Pradhi Shila offers "an all-in-one solution for AI and Machine Learning development, providing everything from data resources to deployment tools under one roof."  This description, along with other information on the website, demonstrates that Pradhi Shila was created to be a direct competitor to IntelliWorks.

53.     As set forth above, Pradhi Shila gained an unfair advantage by coordinating with A. Daga, Borthwick, and Oswal to receive IntelliWorks' Trade Secrets, and exploiting this ill-gotten

advantage to shorten its development timeline, reduce the costs it would need to incur, and therefore come to market far more quickly than if it had developed a competing product on its own.

54.     Similarly, by depriving IntelliWorks of access to much of its own proprietary information, A. Daga, Borthwick, and Oswal significantly impaired IntelliWorks' ability to compete in the market, creating an opportunity for Pradhi Shila.

55.     In a further effort to curry favor for their new venture, A. Daga, Borthwick, and Oswal have improperly sought to forgo collecting on invoices due and owing to IntelliWorks.  For example, A. Daga, Borthwick, and Oswal purported to waive collection of approximately $200,000 in invoices due and owing to IntelliWorks from a client in an apparent effort to garner goodwill from that client and kickstart business for Pradhi Shila, despite the obvious detriment to IntelliWorks.

56.     In short, through a deliberate, premeditated campaign, Defendants have systematically stripped IntelliWorks of its valuable Trade Secrets, deprived the company of the very technology that it created, and left nothing but a shell.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(Violation of the Defend Trade Secrets Act Against**
**Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila)**

57.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

58.     As set forth above, IntelliWorks has protected trade secrets in, among other things, its proprietary software, the accompanying source code, and the underlying data processing techniques, methodologies, and algorithms.

59.     As set forth above, IntelliWorks has, at all relevant times, taken reasonable measures to ensure the confidentiality of its Trade Secrets.

60.     Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila misappropriated IntelliWorks' Trade Secrets in violation of the Defend Trade Secrets Act, as detailed above.

61.     As a direct and proximate result of the misconduct by Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila, IntelliWorks has suffered, and will continue to suffer, irreparable harm and monetary damages attributable to its lost profits, goodwill, competitive advantage, and business opportunities in an amount to be determined at trial, but in no event less than $20,000,000.

62.     This misappropriation of IntelliWorks' Trade Secrets was intentional, willful, and malicious, and warrants exemplary damages and attorneys' fees pursuant to the Defend Trade Secrets Act.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets Under New York Law Against Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila)

63.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

64.     As set forth above, IntelliWorks has protected trade secrets in, among other things, its proprietary software, the accompanying source code, and the underlying data processing techniques, methodologies, and algorithms.

65.     As set forth above, IntelliWorks has, at all relevant times, taken reasonable measures to ensure the confidentiality of its Trade Secrets.

66.     Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila have misappropriated IntelliWorks' Trade Secrets in violation of New York Law.

67.     As a direct and proximate result of the misconduct by Defendants A. Daga, Borthwick, Oswal, and Pradhi Shila, IntelliWorks has suffered, and will continue to suffer, irreparable harm and monetary damages attributable to its lost profits, goodwill, competitive advantage, and business opportunities in an amount to be determined at trial, but in no event less than $20,000,000.

68.     This misappropriation of IntelliWorks' Trade Secrets was intentional, willful, and done in bad faith, and was committed with the intention, and result, of causing damage to IntelliWorks.

### AS AND FOR A THIRD CLAIM FOR RELIEF
**(Breach of Fiduciary Duty Against Defendants A. Daga, Borthwick, and Oswal)**

69.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

70.     Defendants A. Daga, Borthwick, and Oswal owed fiduciary duties to IntelliWorks, including based on their roles as shareholders in a closely-held corporation exercising control over the corporation and serving as agents of the corporation.

71.     These duties include loyalty, care, good faith, full disclosure, and fair dealing.

72.     As set forth above, Defendants A. Daga, Borthwick, and Oswal repeatedly violated these duties by, among other misconduct, engaging in in self-dealing, diversion and usurpation of corporate opportunities, mismanagement, and disloyal acts causing material injury and harm to IntelliWorks.

73.     This conduct was, and continues to be, arbitrary, capricious, willful, and malicious.

74.     By reason of the foregoing, IntelliWorks has been injured by the misconduct of Defendants A. Daga, Borthwick, and Oswal, and is entitled to damages in an amount to be determined at trial, but in no event less than $20,000,000.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
**(Breach of Contract Against Defendants A. Daga, Borthwick, and Oswal)**

75.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

76.     As shareholders of IntelliWorks, Defendants A. Daga, Borthwick, and Oswal were bound by the terms outlined in the Intelliworks corporate by-laws.

77.    These by-laws provide that any individual or entity that becomes a shareholder in IntelliWorks automatically agrees to abide by all terms and provisions outlined in the Confidentiality and Intellectual Property Assignment Agreement, as adopted by the corporation.  This is a binding condition of stock ownership, and each stockholder acknowledges and accepts these terms upon acquiring any shares of stock in IntelliWorks.

78.    The Confidentiality and Intellectual Property Assignment Agreement referenced in the by-laws includes provisions prohibiting the unauthorized use or disclosure of IntelliWorks' confidential information, including its Trade Secrets.

79.    IntelliWorks fully performed under the Confidentiality and Intellectual Property Assignment Agreement.

80.    As set forth above, Defendants A. Daga, Borthwick, and Oswal each repeatedly breached their obligations under the Confidentiality and Intellectual Property Assignment Agreement and by-laws by, among other things, misappropriating and using IntelliWorks' Trade Secrets for their own benefit and the benefit of Pradhi Shila.

81.    As a direct and proximate result of these breaches of contract, IntelliWorks has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than $20,000,000.

**AS AND FOR A FIFTH CLAIM FOR RELIEF**
**(Aiding and Abetting Breach of Fiduciary Duty Against Song and MI Global)**

82.    Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

83.    As set forth above, Defendants A. Daga, Borthwick, and Oswal, among other misconduct, have diverted corporate funds from IntelliWorks for their own personal interests, and

engaged in self-dealing, diversion and usurpation of corporate opportunities, mismanagement and disloyal acts causing material injury and harm to IntelliWorks.

84.     As set forth above, upon information and belief, A. Daga, Borthwick, and Oswal have directed some, or all, of these improperly diverted funds to Defendants Song and MI Global.

85.     As set forth above, Defendants Song and MI Global knowingly participated in the breaches of fiduciary duty committed by A. Daga, Borthwick, and Oswal.

86.     Defendants Song and MI Global provided substantial assistance to A. Daga, Borthwick, and Oswal in committing their breaches of fiduciary duty, including by receiving funds belonging to IntelliWorks and attempting to obscure, conceal, or disguise these transactions as legitimate business expenses.

87.     This misconduct constitutes aiding and abetting the breaches of fiduciary duty committed by to A. Daga, Borthwick, and Oswal.

88.     As a result of the foregoing, IntelliWorks has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be determined at trial, but in no event less than $20,000,000.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment Against Defendants)

89.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

90.     As set forth above, each of the Defendants has improperly received funds, Trade Secrets, or other value from IntelliWorks.

91.     Consequently, each of the Defendants has been unjustly enriched at the expense of IntelliWorks, such that the Court should find that principles of equity and good conscience do not permit Defendants to retain the improper benefits that they received.

92.     As a direct and proximate result of this misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $20,000,000.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (Conversion Against Defendants)

93.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

94.     As set forth above, each of the Defendants has improperly taken, or received, specified funds or items of value, such as the Trade Secrets, from Plaintiff.

95.     Plaintiff has a superior right to the immediate possession of these specified funds and Trade Secrets.

96.     Plaintiff has repeatedly notified Defendants of their obligations to return these funds, and the Trade Secrets.

97.     Despite due demand, Defendants have improperly maintained control and dominion over the funds and the Trade Secrets, and have willfully refused to return them to Plaintiff.

98.     Defendants' conduct constitutes conversion and Plaintiff has been injured thereby, such that it is entitled to damages in in an amount to be determined at trial, but in no event less than $20,000,000.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

a.  Judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $20,000,000, plus pre-judgment interest;

b.  Plaintiff's costs and disbursements incurred in this suit;

c.  Plaintiff's attorneys' fees to the full extent permitted by law; and

d.  Any such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
         February 12, 2026              By:   _____

                                              Andrew L. Kincaid
                                              KINCAID LAW PLLC
                                              *Counsel for Plaintiff*
                                              152 West 57th Street, 8th Floor
                                              New York, New York 10019
                                              Tel.: 646.780.8063
                                              *akincaid@kincaidpllc.com*